UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LISA ELDRIDGE-MURPHY, et al.,<br><br>                          Plaintiffs,<br><br>       v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>                          Defendant. | Case No. 2:13-cv-02175-JCM-GWF<br><br>ORDER |

Presently before the court is plaintiffs Lisa Eldridge-Murphy's and Clark County Education Association's (CCEA) motion for summary judgment. (Doc. # 13.) Defendant Clark County School District filed a response (doc. # 14), and plaintiffs filed a reply (doc. # 16).

Also before the court is defendant's motion for summary judgment. (Doc. # 12.) Plaintiffs filed a response. (Doc. # 15.) Defendant did not file a reply and the deadline to do so has passed.

**I.    Background**

Plaintiff Eldridge-Murphy is employed by defendant as a licensed school nurse. (*See* doc. # 14.) Plaintiff CCEA is a bargaining agent for all licensed non-administrative employees working for defendant. (*See id*.) Eldridge-Murphy is a member of CCEA. (*See* doc. # 13.) Plaintiffs brought the instant civil action under 42 U.S.C. § 1983 seeking damages and injunctive relief against defendant for allegedly depriving Eldridge-Murphy of her due process rights to a hearing before being suspended. (*See* doc. # 1.)

Throughout 2011-2012 defendant disciplined Eldridge-Murphy eight times, including three recommendations for suspension without pay.[1] (*See* doc. # 14.) Plaintiffs appealed all eight

---

[1] Eldridge-Murphy's grievances are with the following actions: 3/24/11 - Written warning; 4/26/11 – Admonition; 5/17/11 – Admonition; 5/17/11 – Recommendation for 1-day suspension; 6/9/11 – Admonition; 6/9/11 – Recommendation for 5-day suspension; 11/23/11 – Admonition; 11/23/11 – Recommendation for 10-day suspension; 4/11/12 – Negative annual evaluation.

disciplinary actions. (*See id.*) Plaintiff CCEA also filed a grievance on behalf of Eldridge-Murphy regarding her unsatisfactory April 11, 2012, evaluation for school year 2011-2012. (*See id.*) In accordance with state law and the negotiated agreement between defendant and CCEA, defendant arranged for an arbitration regarding the appealed disciplinary actions, as well as the grievance filed by CCEA, for a total of nine matters. (*See id.*)

On June 4, 2013, the parties appeared at a hearing before the arbitrator. (*See* doc. # 15.) At the hearing the parties disagreed on which disciplinary actions the arbitrator was to preside over. Plaintiffs alleged that the parties had agreed to arbitrate only two of the eight disciplinary actions that day. The two disciplinary actions were not the oldest or most recent at issue. In other words, plaintiffs expected that defendant would schedule and participate in multiple arbitration hearings, while defendant expected all pending matters to be settled before one arbitrator. The arbitrator noted that plaintiffs were not able to offer any evidence supporting this assertion. Defendant argued that no such agreement existed, and that the school district's disciplinary practice has consistently been to arbitrate all grievances at once, since disciplinary actions are viewed as cumulative.

Plaintiffs stated they would agree to let the arbitrator decide which of the eight actions would be heard that day. Defendant argued that the arbitrator did not have jurisdiction to decide. The arbitrator interpreted her authority as extending only to matters on which the parties agreed she could decide. Therefore, because the parties did not agree on which actions should be arbitrated, the arbitrator decided she did not have authority to proceed and closed the hearing. No testimony was presented regarding Eldridge-Murphy's grievances.

Defendant suspended Eldridge-Murphy on August 21, 2013, for sixteen days without pay. Plaintiffs assert that defendant implemented the suspension without the hearing required by the Fourteenth Amendment, NRS 391.314(8), and the parties' collective bargaining agreement. Defendant asserts that plaintiffs' refusal to participate in the hearing scheduled to resolve all eight disciplinary actions and one grievance acted as a withdrawal of their appeals and grievance. Eldridge-Murphy served the suspension.

On November 25, 2013, plaintiffs filed the instant complaint alleging that defendant

violated Eldridge-Murphy's constitutionally protected due process rights under 42 U.S.C. § 1983 when defendant suspended Eldridge-Murphy without a hearing. The court will now consider plaintiffs' and defendant's motions for summary judgment.

## II. Legal Standard

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

1  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
2  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
3  631 (9th Cir. 1987).

4  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
5  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
6  1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
7  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
8  for trial. *See Celotex Corp.*, 477 U.S. at 324.

9  At summary judgment, a court's function is not to weigh the evidence and determine the
10 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby,
11 Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all
12 justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the
13 nonmoving party is merely colorable or is not significantly probative, summary judgment may be
14 granted. *See id.* at 249-50.

15 **III.   Discussion**

16 Plaintiffs argue that defendant deprived Eldridge-Murphy of her constitutionally-protected
17 property interest in continued employment when defendant placed Eldridge-Murphy on
18 disciplinary suspension without a complete pre-termination hearing.

19 The Fourteenth Amendment protects individuals against the deprivation of liberty or
20 property by the government without due process. To prevail on a § 1983 procedural due process
21 claim, a plaintiff must show: (1) a liberty or property interest protected by the Constitution; (2) a
22 deprivation of that interest by the government; and (3) a lack of process. *Portman v. Cnty. of Santa
23 Clara*, 995 F.2d 898, 904 (9th Cir. 1993). State law is the source for determining the
24 constitutionally cognizable property interest; the due process clause does not create substantive
25 rights in property. *See id.*; *see also Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).

26 "Notice and a meaningful opportunity to be heard are the hallmarks of procedural due
27 process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (quotation marks and alterations
28 omitted) (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989). The Supreme Court

4

has repeatedly recognized, however, that "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 131 S.Ct. 736, 757-58 (2011) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). "This distinction is grounded on the 'common-sense realization' that if every employment decision become a constitutional matter, the Government could not function." *Id.* (quotation marks omitted) (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised personnel decisions.")

### A.     *Whether Eldridge-Murphy has a property interest protected by the Constitution*

First, plaintiffs must show Eldridge-Murphy has a constitutionally protected liberty or property interest. *See Portman*, 995 F.2d at 904. The Supreme Court has not decided whether due process protections extend to "discipline" of tenured public employees, short of termination. *Gilbert v. Homar,* 520 U.S. 924, 929 (1997). In *Gilbert v. Homar,* the respondent challenged his suspension without pay on due process grounds because he was not first provided a hearing. *Id.* The petitioner had suspended the respondent without pay after learning that the respondent had been charged with a felony. *Id* at 928.

While not deciding the issue directly, the Supreme Court "assumed" that suspension without pay could infringe upon a protected property interest, and went on to hold that, because the employee was entitled to a prompt post-suspension opportunity to be heard, "the period of the suspension should be short and the amount of pay during the suspension minimal." *Id.* at 935. Therefore, the respondent was not entitled under due process to a pre-suspension hearing. *Id. at 929.*

Temporary suspensions, like terminations, are deprivations of employment that can implicate the protections of due process. *Assoc. for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (citing *FDIC v. Mallen,* 486 U.S. 230, 240 (1988); *Finkelstein v. Bergna,* 924 F.2d 1449, 1451 (9th Cir.1991)). A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Laws, rules or understandings derived from independent sources such as state law create such claims of entitlement. *Id.*

Defendant asserts that Eldridge-Murphy does not have a constitutionally protected interest, because the opportunity for appeal is merely a "procedural safeguard." Defendant cites *Stiesberg v. California*, 80 F.3d 353 (9th Cir. 1996), as their sole support for its argument. *Stiesberg* dealt with a state statute that prohibited the California highway patrol from taking punitive action against an employee without providing the employee an opportunity for administrative appeal. *Id.* at 356. The Ninth Circuit found the statute's language did not create a "significant substantive restriction" on department decision-making and held that the "mere failure of a public employer to comply with some procedural dictate, could not, without more, give rise to any interest subject to federal cognizance." *Id.* at 356.

Plaintiffs assert that NRS 391 creates a federally protected constitutional property interest. (Doc. # 15). Plaintiffs cite no additional cases to support their authority, but merely distinguish *Stiesberg* – the case the defendant relies on to assert that Eldridge-Murphy lacks a federally protected interest – from the instant facts.[2] Plaintiffs also assert that *Stiesberg* supports their argument that NRS 391 does create a property interest subject to federal due process protection. (Doc. # 15, at 10.) Plaintiffs note that the *Stiesberg* court also held:

> A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on
>
> . . . decision making.

*Stiesberg*, 80 F.3d at 356 (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994)).

---

[2] Plaintiffs also note that defendant "apparently concede[s]" that Eldridge-Murphy had a property interest in her continued, uninterrupted employment with defendant. (Doc. # 16, at 2-3). Plaintiffs are reaching. Defendant does not concede that constitutional due process was required, only that it provided Eldridge-Murphy with the due process that would be required by *Loudermill* if the proceeding had dealt with Eldridge-Murphy's termination. (Doc. # 14, at 10). Because, however, the proceeding merely involved a suspension without pay, defendant asserts that federal due process does not apply. (*Id.*).

6

Here, plaintiffs are correct. NRS 391 and the collective bargaining agreement provide Eldridge-Murphy with a protected property interest in her employment. *See Cain v. McQueen*, 580 F.2d 1001, 1004-05 (9th Cir. 1978). In *Cain v. McQueen*, the Ninth Circuit affirmed the district court's finding of a federal constitutional property interest conferred by NRS 391.3197. NRS 391.3197, as it existed in 1973 when the issue in *McQueen* occurred, dealt with giving probationary teachers a form of limited tenure and a right to know and reply to the reasons for termination. If probationary employees have constitutionally protected due process rights under NRS 391, it follows that post-probationary employees certainly have those rights as well.

Further, unlike *Stiesberg*, which required that the officer have only the ability to undertake an administrative appeal of the punitive action after it had been taken, NRS 391.314 creates significant substantive restrictions on the school district's decision-making. *See Stiesberg*, 80 F.3d at 357. NRS 391.314(8) provides that the school district may not suspend Eldridge-Murphy—a licensed post-probationary employee—without pay until "after a hearing has been held which affords the due process provided for in this chapter." Nev. Rev. Stat. 391.314(8).

When viewed with the parties' collective bargaining agreement's detailed three-step grievance and arbitration procedure, defendant is basically allowed to "recommend" that an employee be suspended, but the neutral hearing officer alone determines whether the defendant has demonstrated that the grounds for the suspension are justified. Therefore, the court finds that NRS 391 and the parties' collective bargaining agreement place significant substantial restrictions on decision making and provide Eldridge-Murphy with a constitutionally protected property interest.

### B. Whether defendant deprived Eldridge-Murphy of her property interest

Second, plaintiffs must show that Eldridge-Murphy has been deprived of her interest. *See Portman*, 995 F.2d at 904. Here, Eldridge-Murphy served a sixteen-day suspension without pay, which satisfies this element. *See, e.g.*, *Bostean v. Los Angeles Unified Sch. Dist.*, 63 Cal. App. 4th 95, 110 (Ct. App. 1998) (leave without pay is tantamount to suspension without pay and implicates a property interest).

### C. Whether defendant provided Eldridge-Murphy with sufficient due process

1 Third, plaintiffs must show a lack of process. *See Portman*, 995 F.2d at 904. "Due process is a flexible concept and its procedural requirements vary depending upon the particular deprivation." *Orloff v. Cleland,* 708 F.2d 372, 378 (9th Cir.1983); *see also Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). "There is a strong presumption that a public employee is entitled to notice and an opportunity to be heard before being deprived of a liberty or property interest." *Orloff,* 708 F.2d at 379 (citing *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 778 (9th Cir. 1982)). However, "where adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing." *Correa v. Nampa Sch. Dist. No. 131,* 645 F.2d 814, 817 (9th Cir. 1981) (citing *Bignall v. N. Idaho College,* 538 F.2d 243, 247 (9th Cir.1976)).

The nature of the deprivation a plaintiff suffered determines how much process she is due. *See, e.g.*, *Ward v. Bolek*, No. 3:12-cv-00136-SI, 2014 WL 795329, at *10 (D. Or. Feb. 27, 2014) (quoting *Ganley v. Cnty. of San Mateo,* 2007 WL 4554318, at *5 (N.D. Cal. Dec. 20, 2007) (applying California law and holding that the plaintiff "has a property interest both in her job in general and in not being placed on unpaid leave or forced to use accrued benefits"). "[D]eprivations short of termination do not always require the full panoply of procedural protections." *Id.*

Analyzing whether adequate procedural due process was provided "essentially boils down to an ad hoc balancing inquiry." *Brewster v. Board of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 983 (9th Cir. 1998). In making that inquiry, the Supreme Court suggests courts balance (1) the private interest that will be affected, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedures, and (3) the government's interest, including the functions involved and the burdens of additional or substitute procedures. *Mathews,* 424 U.S. at 335.

Because suspending Eldridge-Murphy without pay implicates at least some protected property interest, the school district was required to provide her with adequate due process with respect to that employment action. Eldridge-Murphy was not terminated, however, so the lone property interest implicated in this case arises from Eldridge-Murphy's sixteen-day unpaid

suspension. Thus, the court considers only whether Eldridge-Murphy received adequate due process relating to her suspension without pay.

First, Eldridge-Murphy has a significant private interest in the uninterrupted receipt of her paycheck. *See, e.g.*, *Bolek*, 2014 WL 795329, at \*10; *see also Bostean*, 63 Cal. App. 4th at 113. A sixteen day interruption, while significant, obviously does not present the same degree of severity as termination, which imposes a permanent deprivation.

Second, "[a] public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." *Armstrong v. Meyers,* 964 F.2d 948, 950 (9th Cir. 1992). "Grievance/arbitration procedures are a universally accepted method of resolving employment disputes," thus, "the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great." *Id.* When a collective bargaining agreement provides for an adequate grievance and arbitration procedure, even if the procedure is solely available at the discretion of the union and the union elects not to file a grievance on behalf of the employee, that is sufficient process. *Id.* at 951.

Here, Eldridge-Murphy had significant procedures available to her through NRS 391.314 and the parties' collective bargaining agreement. The collective bargaining agreement provides for notice and progressive, multi-level grievance and arbitration procedures, including the option for a hearing in front of a neutral arbitrator. The process, as outlined in the collective bargaining agreement, is far from constitutionally deficient. If an employee is able to complete the grievance and arbitration procedures in NRS 391.314, the court has no doubt that the employee has received due process. The issue in this case is whether plaintiff actually got the process, specifically the pre-suspension hearing, afforded to her by NRS 391.[3]

On June 4, 2013, the parties met with the arbitrator. Defendant urges that *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) and a non-controlling case, *Kelly v. Smith*, 764 F.2d. 1412 (11th Cir. 1985), both instruct that Eldridge-Murphy received due process. Because

---

[3] NRS 391.314(8) provides that the school district may not suspend Eldridge-Murphy without pay until "after a hearing has been held which affords the due process provided for in this chapter."

9

Eldridge-Murphy's representative appeared before the arbitrator and had the opportunity to be heard by agreeing to arbitrate all of the grievances at once, defendant asserts that it afforded Eldridge-Murphy the required opportunity to be heard. By refusing to arbitrate all of the grievances at once, defendant believes Eldridge-Murphy waived the hearing. Thus, defendant asserts that plaintiffs are precluded from pursuing a procedural due process claim.

Plaintiffs counter that defendant's reliance on *Loudermill* and *Kelly* is inappropriate given the instant facts. While the holdings in *Loudermill* and *Kelly* both provide that due process in some circumstances requires that an employee only be afforded notice of the charges and the opportunity to explain "his side of the story," both *Loudermill* and *Kelly* assume that the employee will promptly receive a post-deprivation evidentiary hearing to challenge the deprivation. *See Loudermill*, 470 U.S. at 546 ("Our holding rests in part on the provisions in the Ohio law for a full post-termination hearing."); *Kelly*, 764 F.2d. at 1414 ("if adequate pretermination process is provided, a governmental employer may postpone until after dismissal of a nonprobationary employee's opportunity to obtain a full evidentiary hearing.") The minimal due process discussed in *Loudermill* and *Kelly* is not sufficient, however, when the employee has no post-deprivation rights.

Here, NRS 391.314(8) provides Eldridge-Murphy with due process rights prior to suspension, but neither NRS 391 nor the parties' collective bargaining agreement provides for any post-deprivation procedure after an employee has served her suspension. The due process discussed in *Loudermill* and *Kelly* may be constitutional where an employee has the opportunity for a post-deprivation hearing. In the instant case, however, Eldridge-Murphy had no such access to, or statutory guarantee of, a post-deprivation hearing.

Further, because the arbitrator closed the arbitration without hearing any testimony or argument regarding the substance of the grievances, Eldridge-Murphy does not appear to have had an opportunity to "present [her] side of the story." *Loudermill*, 470 U.S., at 546. Looking at the proceedings as a whole, if defendant was responsible for ending the arbitration hearing prematurely, Eldridge-Murphy will have been denied due process.

    **D.**  ***Whether Eldridge-Murphy waived her right to a hearing***

1   Defendant asserts that it was Eldridge-Murphy who prematurely ended the hearing, therefore waiving her due process protections. According to defendant, plaintiffs waived Eldridge-Murphy's right to a hearing when they attempted to unilaterally change the arbitration schedule and refused to arbitrate all pending matters at the June 4, 2013, arbitration. (Doc. # 12.) Defendant offers as evidence of the procedure to hear grievances in one sitting evidence that six of the eight grievances had been heard together during the "step 2" proceedings.[4] (Doc. # 12, at 6.) After the school district issued decisions on all of the matters, plaintiffs requested arbitration for all of them. At that point defendant scheduled all of the grievances and appeals for one arbitration proceeding. (*Id.*)

Defendant presents no conclusive evidence to support its assertion that all matters were scheduled to proceed during the June 4, 2013, arbitration. Defendant's only real evidence is a May 28, 2013, letter sent to the arbitrator, which plaintiffs were copied on. (Doc. # 12, Exh. 7.)[5] This letter "confirmed" the arbitrator's appointment to hear the "above referenced matter between Clark County School District and the Clark County Education Association," on June 4, 2013, between the hours of 9 A.M. and 5 P.M. (*Id.*) The subject line states, "Notice of Hearing – Lisa E. Eldridge-Murphy," and lists all of Eldridge-Murphy's grievances. (*Id.*) The body of the letter, however, does not specify any details regarding what the arbitrator is scheduled to hear that day, or whether all or only certain of the grievances are scheduled to be resolved.

Plaintiffs sent an immediate response to defendant and the arbitrator stating that they received a copy of the March 28, 2013, letter sent to the arbitrator, and that the cases listed in the subject line were not the cases that the parties had previously agreed to arbitrate. (Doc. # 13, Exh. I; *see infra* note 7 (providing a chronology of the letters exchanged between plaintiffs, defendant, and the arbitrator)). Plaintiffs requested that the arbitrator state that she would be hearing only grievance #1011-163 and the corresponding suspension dated May 17, 2011, and no other cases.

---

[4] Plaintiffs waived the step 2 proceedings for two grievances and asked that they proceed directly to step 3 arbitration. (Doc. # 12, at 6). The hearing on the April 11, 2012, was held separately. (*Id.*).

[5] Plaintiffs submit as evidence defendant's May 28, 2013, letter along with their responses, which the court also evaluates in this order.

11

(Doc. # 13, Exh. I). Plaintiffs further stated they would not agree to proceed to arbitrate the other cases on June 4, 2013, and that, in their opinion, the school district was trying to exceed the scope of the June 4, 2013, arbitration hearing by adding more cases. (*Id.*).

Defendant also presents no conclusive evidence to support its assertion that the procedure or standard practice is to hear all grievances in one hearing. That some of Eldridge-Murphy's grievances were heard together in step 2 does not demonstrate that the definitive practice is to always hear all grievances at once. In fact, that Eldridge-Murphy could ask for some grievances to skip step 2 and proceed directly to arbitration, and that a separate hearing was held for the April 11, 2012, performance evaluation both lend doubt to defendant's assertion that the policy and practice is for all grievances to be arbitrated together.

Plaintiffs state that they did not in any way waive Eldridge-Murphy's hearing; it was defendant who prematurely ended the hearing. According to plaintiffs, they were willing to proceed to arbitration on whatever grievances the arbitrator decided to hear. Because defendant refused to let the arbitrator decide which grievances to hear, defendant forced the arbitration to close. Accordingly, plaintiffs assert that, because defendant forced the arbitration to close before plaintiffs were able to offer any evidence or make any substantive statement regarding the grievances, defendant denied Eldridge-Murphy due process. (Docs. ## 13, 15, 16.)

According to plaintiffs, on January 11, 2013, a CCEA representative, Ron Lopez, met with defendant's representatives to schedule multiple employee grievance arbitrations. (Doc. # 15, at 3.) In this meeting, Lopez explained that CCEA had recently changed its process regarding grievance representations. (*Id.*) Basically, the changes meant that people with limited experience in employee arbitrations would be handling grievance representations. (*Id.*) Therefore, CCEA would agree only to schedule one employee grievance per hearing date for the remainder of the 2012-2013 school year, to allow the new representatives to become more comfortable and familiar with the process. (*Id.*)

Plaintiffs allege that defendant's representative, Fran Juhasz, agreed to this "one grievance per hearing date" proposal. (*Id.*) The parties then scheduled multiple grievance arbitrations, including Eldridge-Murphy's. (*Id.*) Plaintiffs represent that the only grievance scheduled for the

June 4, 2013, arbitration was Eldridge-Murphy's one-day suspension and its resulting admonition.[6] (*Id.*) To support these assertions, plaintiffs submit as evidence multiple letters exchanged between plaintiffs and defendant regarding scheduling. (*See* doc. # 13, Exh. I.)[7] No clear agreement to hear only Eldridge-Murphy's one-day suspension and its resulting admonition appears to have been reached prior to the arbitration. Further, there is no conclusive evidence to

---

[6] According to plaintiffs, the arbitration was originally scheduled for May 21, 2013, but was changed to June 4, 2013, due to a conflict with the arbitrator. (Doc. # 15, at 3).

[7] The interactions are as follows (*see* doc. # 13, Exh. I):

On April 30, 2013, defendant Clark County School District send a letter to plaintiff CCEA to notify plaintiffs of the arbitration schedule. The school district had scheduled all of Eldridge-Murphy's grievances to be heard together.

On May 1, 2013, plaintiff CCEA responded to the school district saying, "[w]e received your letter about changing the arbitrations previously scheduled for . . . Lisa Eldridge. We cannot agree to your request to include additional cases . . . . Lisa Eldridge's arbitration on the grievance 1011-163 and corresponding suspension dated 5/17/11 has been scheduled for May 21, 2013, since the joint scheduling meeting since the joint scheduling meeting on January 11, 2013. We cannot grant your request to move the arbitration hearing to another date or to include additional cases. We will move forward, as previously agreed to, with the arbitration hearing on May 21, 2013." The court notes that the hearing was eventually rescheduled from May 21, 2013, to June 4, 2013.

On May 28, 2013, defendant sent a letter to the arbitrator, copying Michael Soden and Ron Lopez from CCEA, confirming her appointment as arbitrator for the matter of Lisa Eldridge-Murphy including grievance 1112-228 (evaluation – April 11, 2012); appeal (10-day suspension – November 23, 2011); grievance 1112-068 (admonition – November 23, 2011); appeal (5-day suspension – June 9, 2011); grievance 1011-197 (admonition – June 9, 2011); appeal (1-day suspension – May 17, 2011); grievance 1011-163 (admonition – April 26, 2011); grievance 1011-144 (written warning – March 24, 2011).

On May 28, 2013, CCEA sent a response to defendant stating that, on January 11, 2013, defendant and CCEA scheduled grievance #1011-163 and the corresponding suspension dated May 17, 2011. The response stated, "That [grievance #1011-163 and the corresponding suspension] is the only case of Ms. Eldridge-Murphy's that we mutually agreed to schedule for arbitration. On April 30, 2013 Fran Juhasz, . . . [from Clark County School District] informed CCEA that the district was refusing to comply with its earlier agreement. I sent a letter to Ms. Juhasz informing her that this was not our agreement and CCEA refused to arbitrate additional cases for Lisa Eldridge-Murphy. It still stands that CCEA will honor and uphold the agreement we reached with CCSD on January 11, 2013, and we will only arbitrate Ms. Eldridge-Murphy's grievance # 1011-163 and corresponding suspension dated May 17, 2011 on June 4, 2013 before Arbitrator Randall."

On May 29, 2013, CCEA sent a letter to the arbitrator stating that it received a copy of the letter the school district had sent her and that the cases listed to be heard were not the cases that the parties had previously agreed to arbitrate. CCEA requested that the arbitrator state that she would be hearing only grievance #1011-163 and the corresponding suspension dated May 17, 2011, and no other cases. CCEA stated it would not agree to proceed to arbitrate the other cases on June 4, 2013, and that, in their opinion, the school district was trying to exceed the scope of the June 4, 2013, arbitration hearing by adding more cases.

allow this court to conclude that defendant's representative Fran Juhasz did, in fact, agree to adjudicate only one grievance per arbitration.

There is not enough evidence presented by either party for the court to determine 1) whether the parties had come to a prior agreement through the communications between Fran Juhasz and Ron Lopez to schedule and hear only the one grievance and accompanying admonition at the June 4, 2013, arbitration, 2) whether there are procedures or policies in place that dictate how grievances are to be scheduled, and 3) which party was responsible for "ending" the arbitration. Accordingly the court will deny plaintiffs' and defendant's motions for summary judgment as the court cannot determine at this time that 1) Clark County School District denied Eldridge-Murphy due process, or 2) Eldridge-Murphy waived her hearing.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs Lisa Eldridge-Murphy's and Clark County Education Association's (CCEA) motion for summary judgment (doc. # 13) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant Clark County School District's motion for summary judgment (doc. # 12) be, and the same hereby is, DENIED.

DATED THIS 14th day of January, 2015.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE